**IN THE COURT OF APPEALS OF IOWA**

No. 22-1657
Filed January 25, 2023

**IN THE INTEREST OF I.O. and A.C.,**
**Minor Children,**

**D.N., Father of I.O.,**
    Appellant,

**M.C., Father of A.C.,**
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

Two fathers separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant father D.N.

Michele R. McCann of McCann Law, PLLC, Cedar Falls, for appellant father M.C.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until withdrawal), Mary A. Triick, and Natalie Hedberg, Assistant Attorneys General, for appellee State.

Mark A. Milder of Mark Milder Law Firm, Denver, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

The fathers of eight-year-old I.O. and six-year-old A.C. challenge the termination of their parents rights.[1]  Both fathers contest the grounds for termination and contend that termination was not in their child's best interests because of their close bond.  In the alternative, they urge that permanency should have been deferred for six months.  After an independent review of the record, we affirm the juvenile court's decision to end the children's legal relationships with their fathers.[2]  Neither I.O.'s father, Dejoni, nor A.C.'s father, Malik, have participated in the unification services ordered by the court and the Iowa Department of Health and Human Services.  And, on this record, postponing permanency would conflict with the mandates of Iowa Code section 232.104(2)(b) (2022).

## I.      Facts and Prior Proceedings

I.O. and A.C. were removed from their mother's custody in March 2021 because of her inadequate supervision, drug use, and unsanitary conditions in the home.  On top of those concerns, kindergartner I.O. had missed almost a month of school.  After removing the children, the department contacted their fathers.[3]  Dejoni conceded he was not currently "in a position" to care for his son.  Malik's whereabouts were unknown.  Given their unavailable fathers, the children were

---

[1] The children's mother does not appeal.

[2] We review termination orders de novo.  *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).  We respect the juvenile court's factual findings, but they do not dictate our result on legal questions.  *Id.*  The State must prove the grounds for termination by clear and convincing evidence.  *Id.*

[3] The mother told case workers that the fathers had not been active in their children's lives.

placed with other relatives: I.O with his paternal great-grandmother and A.C. with her paternal aunt.

As the months wore on, neither father participated in court-mandated services or visited their children through official channels. For example, in July 2021, the court ordered Dejoni to obtain a substance-abuse evaluation and follow through with any recommended treatment. But he failed to complete the evaluation. And while Dejoni had some contact with I.O. at his grandmother's home, the department could not measure his parenting skills because the family interactions were unsupervised.

As for Malik, for months his sister told the department that she did not know how to get ahold of him. Only later did case workers learn that she had been allowing her brother clandestine contact with A.C. During one of those unapproved visits, A.C. was operating a lemonade stand when she witnessed her father be shot in the back. Malik's injuries from the bullet required hospitalization followed by an extended stay at a rehabilitation center. Malik suffered nerve damage that prevented him from visiting A.C. And he faced criminal charges unrelated to the shooting.

After the shooting, the department moved A.C. into the same relative placement as her brother. The case worker reported that the children were glad to be reunited. What's more, their difficult behaviors stabilized in the care of I.O.'s great-grandmother, who wants to adopt them both.

The State petitioned to terminate parental rights in April 2022. The juvenile court heard from both fathers at the trial. In September, the juvenile court granted

the State's petition under Iowa Code section 232.116(1), paragraphs (e) and (f). The fathers both challenge the termination order.

## II.   Analysis

### A. Dejoni's Appeal

Dejoni argues that the State did not prove the grounds for termination.[4] When the juvenile court terminates under more than one paragraph of section 232.116(1), we may affirm on any ground supported by clear and convincing evidence. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Looking to paragraph (f),[5] we find sufficient evidence to support the termination.

In a single sentence in the petition on appeal, Dejoni argues that he "presented evidence that he was capable of caring for the child and that the child could be placed in his care—or with additional time could ultimately be placed in his care." We disagree. Dejoni refused to engage in unification services. As the juvenile court observed, the father "has demonstrated that he is not desirous of

---

[4] Dejoni's petition on appeal cites both grounds for termination in its issue heading, but focuses on the "significant and meaningful contact" element of paragraph (e), asserting that he "regularly saw his son" at the grandmother's home. Further confusing the issue, counsel mistakenly refers to a different client in the body of the argument.

[5] Termination is proper under that paragraph if the court finds that all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

being a placement for the child, only choosing to visit the child as it suits him." Termination was proper under paragraph (f).

Next Dejoni argues that termination of his parental rights was not in I.O.'s best interests and, in fact, was detrimental to the child because of the closeness of the father-son bond. *See* Iowa Code §§ 232.116(2), (3)(c). True, the record shows that I.O. enjoys spending time with his father at the grandmother's home. But when we apply the framework in section 232.116(2), we find the child's long-term nurturing and growth will be furthered by moving toward adoption. In fact, even Dejoni testified that he believed it was in I.O.'s best interest to stay in the custody of the grandmother. And Dejoni has not met his burden to show that the permissive factor in section 232.116(3)(c) should prevent termination. *See In re A.H.*, 950 N.W.2d 27, 42 (Iowa Ct. App. 2020) (explaining a court may bypass termination if there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship). The closeness of the parent-child relationship is not a reason to forego termination here. And luckily, their relationship need not end. The grandmother has "voiced a willingness" to maintain contact between I.O. and Dejoni after termination.

Finally, Dejoni suggests that "no adjudicatory harm would come to the child" if he was given more time to work toward unification. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) ("[T]he juvenile court may deny termination and give the parent an additional six months for reunification only if the need for removal 'will no longer exist at the end of the additional six-month period.'" (quoting Iowa

Code § 232.104(2)(b))). But Dejoni offers nothing to show that he would be prepared to parent I.O. full time within six months.

After giving careful consideration to all of Dejoni's arguments, we affirm the termination of his parental rights.

### B. Malik's Appeal

Like Dejoni, Malik challenges the grounds for termination. He argues that the State did not present clear and convincing evidence that A.C. could not be safely placed in his custody. He asserts that he has "obtained housing and employment and, once physically healed from the gunshot wound, would be able to provide a secure living environment for his daughter." In explaining the shooting, he insists that "he had no enemies and did not know he was being targeted by any individuals."

Targeted or not, Malik faced his own criminal charges at the time of the termination hearing. And he did not meaningfully engage in services during the child-welfare case. Malik attended only one authorized visit with A.C. And he recognized that because of his recuperation from the gunshot, A.C. could not have been placed in his custody "at the present time." *See* Iowa Code § 232.116(1)(f)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (defining "at the present time" as the time of the termination hearing). Termination was proper under paragraph (f).

Malik next argues termination was not in A.C.'s best interests and should have been precluded by their strong bond. *See* Iowa Code §§ 232.116(2), (3)(c). He asserts that after recovering from his gunshot injury, he will be "prepared to fully address the physical, mental and emotional needs of his daughter." In

describing their bond, he testified that A.C. knows him and cries when it's time for her to leave.

We don't question Malik's love for his daughter. But we find that her best interests are served by termination of his parental rights. The record shows that Malik has not been involved in his daughter's life.[6] And the child is thriving in the care of I.O.'s grandmother. In fact, Malik acknowledged in his testimony that A.C. was "in a good placement" and benefitted from being with her brother. We find A.C.'s safety and physical, mental, and emotional needs are best met in that placement. *See* Iowa Code § 232.116(2). We also find that Malik has not shown "the type of bond [with A.C.] that would make termination in this case improper." *See W.T.*, 967 N.W.2d at 324.

Finally, Malik makes a plea for delayed permanency. At first glance, his request for more time to recover from the gunshot wound before uniting with his daughter seems like a reasonable ask. But we can't view his current situation in a vacuum. Before the shooting, he did not interact with the department or the juvenile court to confirm his ability to parent A.C. As the State points out, he has not shown that he can provide a safe home for his daughter. Without "specific factors, conditions, or expected behavioral changes" that justify believing the need for removal from parental care would no longer exist after six months, a delay is not warranted. *See* Iowa Code § 232.104(2)(b).

**AFFIRMED ON BOTH APPEALS.**

---

[6] Malik testified that he stayed away from A.C. when he was "a major fugitive on the run" so he did not place her in harm's way. But once he resolved the outstanding warrants, he tried to start a relationship with her.